# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KENNETH McGOWEN, | ) | 1:06cv01212 AWI DLB |
| | ) | |
| | ) | ORDER DENYING PLAINTIFF'S |
| Plaintiff, | ) | MOTION FOR REMAND |
| | ) | |
| v. | ) | (Document 12) |
| | ) | |
| NESTLE FOOD COMPANY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

On October 6, 2006, Plaintiff Kenneth McGowen ("Plaintiff") filed the instant motion to remand this action to the Stanislaus County Superior Court. The motion was heard before the Honorable Dennis L. Beck, United States Magistrate Judge, on January 12, 2007. Sylvia Courtney appeared on behalf of Plaintiff. Adam Levine appeared on behalf of Defendant Nestle′ USA, Inc. (erroneously sued as Nestle′ Food Co., hereinafter "Defendant").

**PROCEDURAL BACKGROUND**

Plaintiff filed his discrimination complaint in the Stanislaus County Superior Court on August 7, 2006, alleging four causes of action against Defendant, his employer: (1) disability discrimination in violation of the California Fair Employment and Housing Act ("FEHA"); (2) failure to provide reasonable accommodations in violation of FEHA; (3) failure to engage in the

1

interactive process in violation of FEHA; and (4) wrongful termination in violation of public policy.[1]

Defendant was served with the summons and complaint on August 8, 2006, and filed a notice of removal on September 6, 2006.  Defendant's notice of removal is based on Section 301(a) of the Labor Management Relations Act ("LMRA"), which confers federal jurisdiction for suits alleging violations of contracts between an employer and a labor organization.

Plaintiff filed the instant motion to remand on October 6, 2006, arguing that there is no need to interpret the applicable Collective Bargaining Agreement ("CBA") and thus no preemption.  Defendant filed its opposition on December 21, 2006.  Plaintiff filed his reply on January 5, 2007.

**FACTUAL BACKGROUND**

According to the allegations of the complaint, Plaintiff commenced his employment with Defendant in 1975 and all relevant times, was employed as a first (day) shift Depalletizer Operator at Defendant's Modesto Plant.  During Plaintiff's employment, he was a member of General Teamsters Local #386 ("Union") and the terms and conditions of his employment were subject to a CBA.  Plaintiff suffers from a physical disability known as Post-Polio syndrome, which causes limitations in his upper and lower extremities.

On or about February 28, 2005, Defendant informed Plaintiff that his position was being eliminated.  According to Defendant, his position was eliminated so that the first shift, like the other two shifts, had only one Depalletizer Operator.  Plaintiff was reassigned to the position of Depalletizer Operator on the third (night) shift.  Plaintiff alleges that his managers knew that he was physically unable to perform the position without an accommodation.  Plaintiff alleges that he was forced into early retirement and suffered a significant loss of earnings and diminution in retirement benefits.

On February 28, 2005, Plaintiff's Union filed a grievance alleging that Defendant had not actually "eliminated" Plaintiff's job on the first shift within the meaning of the CBA, but had

---

[1] Plaintiff's public policy claim is based on the same allegedly discriminatory actions of Defendant that give rise to his FEHA claims.  He alleges that such actions are contrary to the public policy of the state of California.

reassigned his duties to less senior employees in violation of the Seniority Provision (Section 17) and Bid Provisions (Section 18) of the CBA. On May 16, 2005, while the grievance was still pending, Plaintiff informed Defendant that he could no longer perform the third shift Depalletizer Operator position because of his disability. He explained that working the third shift interfered with his sleep patterns, which in turn aggravated his Post-Polio syndrome. Plaintiff requested that he be returned to his original position on the first shift. Within a few months, the employee who occupied the first shift Depalletizer Operator position retired and Plaintiff was awarded this position. Plaintiff, however, did not return to work.

## DISCUSSION

A.      Preemption Under Section 301

By statute "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

Section 301(a) of the LMRA establishes federal jurisdiction for "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). Federal law governs suits for breach of a CBA under the LMRA, which therefore completely preempts any state cause of action for breach thereof. *Franchise Tax Bd. Of State of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 23 (1983); *Cook v. Lindsay Olive Growers*, 911 F.2d 233, 237 (9th Cir.1990). "Even suits based on torts, rather than on breach of collective bargaining agreements, are governed by federal law if their evaluation is 'inextricably intertwined with consideration of the terms of [a] labor contract.'" *Miller v. AT & T Network Systems*, 850 F.2d 543, 545 (9th Cir.1988) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985)).

The LMRA does not, however, preempt the application of a state law remedy when the "factual inquiry [under the state law] does not turn on the meaning of any provision of a collective bargaining agreement." *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399,

407 (1988).² Thus, claims that only "tangentially involv[e]" a provision of a collective-bargaining agreement are not preempted by section 301 . . . Nor are causes of action which assert "'nonnegotiable state-law rights . . . independent of any right established by contract.'" *Miller v. AT & T Network Sys.*, *supra*, 850 F.2d at 546.

In *Miller*, 850 F.2d at 548, the court articulated the following analysis for determining whether claims based on "nonnegotiable" and "independent" state law rights are subject to preemption:

> The court must consider (1) whether the CBA contains provisions that govern the actions giving rise to a state claim, and if so, (2) whether the state has articulated a standard sufficiently clear that the state claim can be evaluated without considering the overlapping provisions of the CBA, and (3) whether the state has shown an intent not to allow its prohibition to be altered or removed by private contract. A state law will be preempted only if the answer to the first question is 'yes,' and the answer to either the second or third is 'no.'

Following this body of authority, the Ninth Circuit has explicitly recognized that a claim is not preempted by Section 301 if it merely requires reference to, as opposed to interpretation of, the provisions of a CBA. *See, e.g., Beals v. Kiewit Pacific Co., Inc.*, 114 F.3d 892, 895 (9th Cir.1997); *Associated Builders & Contractors, Inc. v. Local 302 Int'l Brotherhood of Electrical Workers*, 109 F.3d 1353, 1357 (9th Cir.1997); *Ramirez v. Fox Television Station, Inc.,* 998 F.2d 743, 749 (9th Cir.1993) ("Fox errs in equating 'reference' with 'interpret'").

The Ninth Circuit has also held on several occasions that the LMRA does not preempt discrimination claims under FEHA because the rights created thereunder are nonnegotiable and independent of rights under a CBA. *See Ramirez v. Fox Television Station, Inc.*, *supra*, (finding no preemption of a FEHA national origin discrimination claim); *Cook v. Lindsay Olive Growers*, 911 F.2d 233, 240 (9th Cir.1990) (finding no preemption of a FEHA religious discrimination claim); *Jackson v. Southern Cal. Gas Co.*, 881 F.2d 638, 644 (9th Cir.1989) (finding no

---

² The issue in *Lingle* was "whether an employee covered by a collective-bargaining agreement that provides her with a contractual remedy for discharge without just cause may enforce her state law remedy for retaliatory discharge." *Lingle*, 486 U.S. at 401. Reversing the court of appeals' finding of preemption, the Court noted that the elements constituting retaliatory discharge under Illinois law pertained to the conduct of the employee and the conduct and motivation of the employer. To defend against a retaliatory discharge claim, an employer must show that it had a nonretaliatory reason for the discharge; this purely factual inquiry does not turn on the meaning of any provision of a collective-bargaining agreement. *Id*. at 407.

4

preemption of a FEHA racial discrimination claim); *Chmiel v. Beverly Wilshire Hotel Co.*, 873 F.2d 1283, 1286 (9th Cir.1989) (finding no preemption of a FEHA age discrimination claim); *Ackerman v. Western Elec. Co., Inc.,* 860 F.2d 1514, 1517 (9th Cir. 1988) (finding no preemption of disability discrimination claim under FEHA, despite a broad provision in the CBA prohibiting discriminatory discharge, where resolution of state law claim did not require reference to terms of the CBA).

  Recognizing the lack of a black and white rule, the Ninth Circuit has commented,

> The demarcation between preempted claims and those that survive § 301's reach is not, however, a line that lends itself to analytical precision.  As the Supreme Court acknowledged in *Livadas*, "[T]he Courts of Appeals have not been entirely uniform in their understanding and application of the principles set down in *Lingle* and [*Allis-Chalmers* ]." *Id.* at 124 n. 18, 114 S.Ct. 2068.  And little wonder.  "Substantial dependence" on a CBA is an inexact concept, turning on the specific facts of each case, and the distinction between "looking to" a CBA and "interpreting" it is not always clear or amenable to a bright-line test.  See *Balcorta v. Twentieth Century-Fox Film Corp.,* 208 F.3d 1102, 1108-09 (9th Cir.2000); *Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 748 (9th Cir.1993).  Nevertheless, the interpretive principles the Supreme Court has articulated help guide us through the analytical thicket.

*Cramer v. Consolidated Freightways, Inc.,* 255 F.3d 683, 690 (9th Cir. 2001).

B.  <u>Relevant CBA Sections</u>

  Section 17  SENIORITY

  17.4  In the event of a reduction in force the following procedures shall be applied, provided the employees in the department having seniority are capable of performing the remaining job.

  17.5  When one of several jobs in the same classification on the same shift is required to be eliminated, the employee in the classification on that shift who has the least location seniority shall be the employee whose job is to be eliminated provided the employee remaining on the job is qualified on the job and has completed a minimum of six (6) months in this position after being qualified.  If the employee remaining on the job does not meet the above criteria, that employee will be displaced and Section 17.6(a) and (b) shall be applied.

  17.6  The employee whose job is to be eliminated shall have the following seniority rights which shall be exercised in the order listed:  (a) He/She shall have the right to displace the employee with the least departmental seniority in his/her wage bracket in his/her department whose job he/she is capable of performing. . . (b) If he/she can displace no employee pursuant to paragraph 17.6(a), he/she shall have the right to displace the employee with the least location seniority in his/her wage bracket at the plant or location whose job he/she is capable of performing.  The

    Company in its sole discretion, based upon all facts, shall make a determination of the employee's capabilities of performing said job. . .

Section 18  JOB BIDDING

18.2  If an employee becomes physically disabled, the Union and the Company may agree upon a job which is suitable employment for the employee, and when a vacancy occurs in that job, it may be filled by assignment of the disabled employee without regard to the provisions of this Section.

C.  <u>Analysis</u>

  The outcome of this motion turns on whether the CBA requires interpretation in resolving Plaintiff's causes of action. Indeed, the parties agree that this is the ultimate question and agree to the applicable law, as set forth above.

  The parties do not agree, however, on the extent to which the CBA will require interpretation, if at all, during the course of this litigation. While Plaintiff contends that the meaning of the relevant provisions in the CBA is clear and requires no interpretation, Defendant argues that the very actions of which Plaintiff complains - job elimination and reassignment - are governed by Sections 17 and 18 of the CBA, and thus determining whether Defendant acted in accordance with the CBA will inevitably require interpretation of these provisions.

  The logical starting point for this analysis is a breakdown of the elements and burdens of Plaintiff's disability discrimination claim, the crux of Plaintiff's complaint and the claim most likely to require interpretation of the CBA.[3] Under FEHA, Plaintiff bears the initial burden of establishing a prima facie case of discrimination by proving that: (1) he suffers from a disability; (2) he is a qualified individual; and (3) he was subjected to an adverse employment action because of the disability. *Brundage v. Hahn,* 57 Cal.App.4th 228, 236. Assuming Plaintiff satisfies his burden, Defendant must then offer a legitimate nondiscriminatory reason for the adverse employment decision. *Id.* Finally, Plaintiff bears the burden of proving that Defendant's

---

[3] As Plaintiff argued at the hearing, the affect of the CBA on the reasonable accommodation claim and interactive process claim is somewhat minimal, meaning that the provisions of the CBA have little impact on these duties under FEHA. However, Plaintiff's complaint contains more than just these two claims and the preemption analysis must take into consideration *all* claims in Plaintiff's complaint.

6

proffered reason was pretextual. *Id.* (citing *Caldwell v. Paramount Unified School Dist.,* 41 Cal.App.4th 189, 196-197 (1995).

Pursuant to the above framework and assuming Plaintiff proves his prima facie case of disability discrimination, the burden will shift to Defendant to put forward a legitimate, non-discriminatory reason for eliminating Plaintiff's position and assigning the functions of the position to other employees. Defendant's rebuttal will undoubtedly revolve around the actions it took under the CBA. Defendant will likely argue that it was required, pursuant to the terms of the CBA, to eliminate Plaintiff's position and reassign the functions in the manner that it did, thereby offering a legitimate, non-discriminatory reason for its actions.

The next step is key to the resolution of this motion. Once Defendant argues that it has a legitimate, non-discriminatory reason for its actions because it was required to follow the terms of the CBA, the burden will shift back to Plaintiff to demonstrate pretext. As Plaintiff admitted at the hearing, Plaintiff will likely argue that Defendant's reason(s) is pretextual because Defendant violated the CBA in eliminating Plaintiff's position and scattering the functions of the position among several employees. Analyzing whether Defendant's actions were legitimate or pretextual, and determining whether any inference can be drawn from Defendant's actions, will involve a fairly detailed analysis of the CBA. This, of course, leads to Section 301 preemption.

Citing *Humble v. Boeing,* 305 F.3d 1004 (9th Cir. 2002), Plaintiff contends that mere reference to the CBA or the possibility of interpretation is insufficient to preempt Plaintiff's action. There, plaintiff alleged causes of action for disability discrimination under Washington law (failure to provide reasonable accommodation), as well as other claims. The Ninth Circuit found that the claim was not preempted, rejecting Boeing's argument that the seniority provisions of the CBA would need to be interpreted to determine which jobs plaintiff was eligible, for two reasons.

First, the court cited *Jimeno v. Mobile Oil Corp.*, 66 F.3d 1514 (9th Cir. 1995), in reiterating its prior holdings that "a CBA provision does not trigger preemption when it is only potentially relevant to the state law claims, without any guarantee that interpretation or direct

reliance on the CBA terms will occur." *Humble*, at 1110. Because plaintiff did not argue that she could only be accommodated by a transfer, and because Washington law provides for reasonable accommodations to be made in other ways, i.e., job modification, the seniority provisions might not be implicated at all.

Second, again citing *Jimeno*[4], the court explained that "the mere need to refer to a CBA to determine the jobs for which a disabled employee might be eligible may not be sufficient to trigger § 301 preemption, even if such consultation is certain to occur." *Id.* The court then explained the affect of the seniority provisions:

> Jimeno is closely on point with respect to the preemption-triggering effect of CBA seniority provisions in the present case, and is consistent with both Supreme Court precedent and our own explaining that the mere need to consult the terms of the CBA in the course of resolving a state law claim does not necessarily result in preemption . . . We do not discount the possibility that in the course of resolving the reasonable accommodation claim, an interpretive dispute might arise under [the seniority provisions] over the jobs for which Humble was eligible. However, any interpretation of the CBA's provisions in the present case is only potential and limited; the CBA terms do not inhere in the nature of Humble's reasonable accommodation claim, nor does the claim, based on non-negotiable duties under Washington law, "substantially depend" upon application and interpretation of seniority requirements.

*Humble*, at 1011.

While the Court recognizes that, at first glance, *Humble* might appear to be very similar to the instant case, the two cases are distinguishable. First and most importantly, the resolution of Plaintiff's case will require more than mere reference to the CBA. This fact is neither speculative nor is the CBA "potentially" relevant; as explained above, the analysis of Plaintiff's pretextual explanation will require analysis of the CBA. Second, this analysis will involve more than just the seniority provisions, as was the case in *Humble,* because part of the analysis will require deciding whether Defendant violated the CBA by distributing the functions of Plaintiff's prior position among several employees.

---

[4] In part, *Jimeno* determined that issues of the employer's defense to a reasonable accommodation claim (i.e., in determining undue hardship, it would be necessary to consider factors such as facility size, number of employees, composition of the workforce, and facility budgets) which might involve consultation of the CBA rendered the CBA only "peripherally relevant" to the claim and so did not mandate preemption. *Jimeno*, at 1527.

For the reasons discussed above, the Court finds the Ninth Circuit's analysis in *Audette v. Int'l Longshoremen's & Warehouse Union*, 195 F.3d 1107 (9th Cir. 1999), more instructive under the facts of this case. In *Audette,* longshore worker plaintiffs alleged that defendants breached a prior settlement agreement by denying them registration as Class B workers under their CBA in retaliation for a prior lawsuit and because of the gender of some of the plaintiffs, violating both the settlement agreement and Washington state antidiscrimination law. The Ninth Circuit upheld the denial of remand, and as to the state gender discrimination claim, explained that it was preempted because:

> The instant [claim] does not involve a free-standing claim of discrimination. Rather, the claim turns on whether defendants' alleged failure to perform the settlement agreement was motivated by retaliation or discrimination. Under Washington discrimination law, an employer or union can refute a prima facie case of discrimination by offering a legitimate nondiscriminatory reason for their employment decision. Here, resolution of the discrimination and retaliation claim turns on defendants' offer of a "legitimate nondiscriminatory reason" requiring interpretation of the collective bargaining agreement.... Accordingly, this claim is preempted.

Id. at 1113.

Accordingly, because the resolution of Plaintiff's claim will require interpretation of the CBA, the Court finds that Plaintiff's claims are preempted. "In enacting § 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules." *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 104 (1962). The Court finds no reason to deviate from this principle. Plaintiff's motion to remand is DENIED.


IT IS SO ORDERED.

Dated:  **January 19, 2007**              /s/ **Dennis L. Beck**
3b142a                                    UNITED STATES MAGISTRATE JUDGE

9